The first case of the day is cause number 17-40299, United States of America v. Jennifer Lynn Richmond. Are the parties ready to proceed? All right, ready? Appellant, you may proceed. Good morning. May it please the court, Kayla Gassman for the appellant Jennifer Richmond. The issue before the court is whether the officer slapped with Ms. Richmond's tire during a traffic stop is a search under the Fourth Amendment. The officer's slap of the tire was a physical intrusion onto Ms. Richmond's property for the purpose of gathering information or evidence to discover more than what could have been observed by merely looking. Under the Supreme Court's property-based analysis in Jones and Hardinas, that is a search under the Fourth Amendment, and the district court erred by holding otherwise. Under Jones and protected area because a car is an aspect that is protected by the Fourth Amendment. Second, there was an unlicensed physical intrusion by the government that is a trespass onto that constitutionally protected property. And third, there was an information-gathering purpose because the officer slapped the tire to discover some information about what might be inside the tire. In both Hardinas and Jones, the Supreme Court stated the property-based rule of the Fourth Amendment very succinctly when it said, when the government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has occurred. And what both Jones and Hardinas say the original meaning of the Fourth Amendment was, was based in property and based in trespass law. And here the officer's action was undoubtedly a trespass to chattel. I would point the court to two things to support that, which is the restatement of torts, which defines a trespass to chattel as intentionally causing physical contact with another person's possession. Obviously, that is what the officer did in this case when he physically intruded on Ms. Richmond's property. I would also point the court towards Schmidt v. Stassi, which is a case out of the Eastern District of Louisiana, where Judge Afric held that the swabbing of the exterior handle of an SUV was a search under the Jones property-based analysis because it was a trespass to chattel for the purpose of gathering information. And in that case, Judge Afric also relied on the restatement of torts to define trespass to chattel. I understand your Jones argument. I see where you're applying Jones to this situation. But at the end of the day, the Supreme Court keeps saying the Fourth Amendment's about reasonableness at the end of the day. And it just seems if you look at what's reasonable, touching a tire for a few seconds seems so less invasive than things that police are allowed to do all the time, like dog sniffs and things like that. So if the ultimate standard is reasonableness, I think that's why the government's final argument is just even if it is a search, it's a reasonable suspicion standard. What was unreasonable about touching the tire for a few seconds? I think it has long been held by this Court and the Supreme Court that a search of an automobile without probable cause is unreasonable. And that's what makes this search unreasonable under a very long line of precedent regarding what officers can do to automobiles. It's already an exception to the Fourth Amendment that officers can search an automobile simply with probable cause and without getting a warrant. And since that is already an exception, it should be strictly limited and there's no justification for extending it. Even if we think this is so much less invasive than opening the car door and scrounging around for whatever private materials might be inside a car? Certainly officers could not do that without probable cause. Sure, I agree. But isn't this much less invasive than that? Perhaps from the perspective of privacy rights, but I think what's important is to remember that this is a property-based case. And Jones and Hardinus both said that privacy rights are irrelevant when you're talking about the property-based analysis. In the Court, the Supreme Court has a long line of precedent drawing a very strict boundary between looking and touching. So drawing the line at a physical inspection, at any kind of touching for the purpose of gathering information, is perfectly in keeping with cases like, I've cited Bond in the brief, where the Supreme Court held that squeezing a suitcase at a bus was a search, and explained there that physically invasive inspection is simply more intrusive than visual inspection. And the Supreme Court has reiterated that principle just as recently as this term in Collins v. Virginia, which was the case about the motorcycle on the curtilage, where the Court emphasized a couple of times that the fact that officers can lawfully view an area does not give them the green light to physically intrude on it. That precedent certainly supports drawing the line of intrusiveness at a physical inspection. Even in this Court's opinion in Bean, the panel was divided on several issues, but I think all agreed that a physically invasive inspection is uniquely intrusive. And I would, without sucking up, point to a particular line in Judge Graves' dissent in that case, where he said, the Supreme Court has repeatedly found physical invasions that exceed the permissible scope of the government's presence constitute a Fourth Amendment search. Citing Bond, the case about squeezing a suitcase, citing Arizona v. Hicks, which held that moving a stereo a few inches constituted a search, New York v. Class, which held that reaching inside a window of a car to move some papers to view the VIN number did constitute a search. So there's a long line of precedent holding that physically invasive inspections are more intrusive than visual inspections and support drawing the line of intrusiveness at touching. What cases can you cite where a car has been held to be a personal effect? So the Supreme Court has said that very clearly, and Jones itself said that a car is an effect. I believe, I'm sure there are a long line of cases I could give to you, but certainly Jones does say that very explicitly. When a car goes onto a roadway, is there an expectation of privacy in that car, such that it's in plain view? It is in plain view, and the cases have held there's a lessened expectation of privacy in cars, but again, what we're talking about here is property rights, and the property-based test for a Fourth Amendment search, which is, the privacy rights are irrelevant to that analysis. What concerned me was the fact that the officer had noted that the tire was wobbly, that it perhaps presented a safety concern. So to the extent that you have a law enforcement officer looking at something in plain view that he has determined constitutes a potential safety hazard, why wasn't he, within his rights as a law enforcement officer, to check to see if the car was actually safe for operation? Well, I think one thing that's very important to keep in mind on that point is that the officer has that he had both concerns. He had potentially a safety concern, but he also had a crime detection concern, and when the Supreme Court has allowed officers to do searches or to do other invasive actions on the basis of safety, they have said the officer needs to solely be motivated by safety. For example, a car is disabled, the driver is incapacitated, and perhaps the officers are moving a car from the side of the road to remove that hazard, then they may do an inventory search or something like that, but that's only because that action is totally divorced from crime detection. What case is that? That was Cady v. Dombrowski, as well as, I believe, South Dakota v. Oppenheimer, both of which are cited in the briefs, do use language such as the officer is solely motivated by a safety concern or a sort of traffic management concern, and I believe Dombrowski is the one that says the officer's actions were totally divorced from the investigation or detection of crime, and that's what makes their actions in those cases permissible because it was not a crime detection purpose. Here, the officer testifies that he had both concerns, and I don't think he needs to search without permission to assuage whatever safety concerns he might have. You could simply have asked her about her tires at that point. You could have asked, it looks like there may be something wrong with your tires. Are you aware of that? Have you had that checked out? Do you mind if I take a look? Would you like me to take a look? To me, there's something quite ironic about saying perhaps the officer could search my for my own good without my permission and then use whatever he finds when he had the dual purpose of perhaps safety, perhaps crime, and then use what he finds against me, and that that would not violate the Fourth Amendment. Even if his concern was not just for the safety of the driver, or in this case the safety of Ms. Richmond, but for the safety of others who may be traveling on the roadway. Even if that was part of his concern, that wouldn't be sufficient. That would not be sufficient if he's also motivated by potentially detecting crime, which he testifies that he was. Also on the question of the safety concern, I would also point to the record. The record does not really support that that was his concern. After this, he allows Ms. Richmond to drive about 10 miles to the dealership to have the tires removed and opened without apparently any concern for her safety or his safety following behind her or any other drivers on the road. So I think on this record, I understand the court's concern with the safety issue, but I think this record simply does not support that that was even the officer's primary concern here. Even though the prosecutor at the suppression hearing did a real good job of leading him to talk about his safety concerns. That's true, but the prosecutor also asks about both crime detection and safety, and he agrees that he was concerned about both. What do you do with Cardwell v. Lewis, which is the 1974 Supreme Court case that says there's no search when police took paint scrapings from a car and also examined the tire in that case? So I don't actually read that case as saying, I think the plurality does say perhaps there's no search, but I think what the actual holding of that case is, is that there was probable cause. So that simply would not answer the question here, because if there was probable cause, the automobile exception would allow the search of the car. Right. But it says both. I mean, I agree. It also says that. I don't know how to figure out which is, which is the holding. It does say both, but I believe, I mean, certainly the more narrow holding would be that there was probable cause, and at most, I think that case is somewhat ambiguous about exactly what the court is saying. And one of the things that it does say is that in any event, there was probable cause, which would have permitted the search. Let me ask you about good faith. I know there's this debate about whether good faith was preserved, because this has a real strange procedural posture with the way the tire issue was raised. But assume for a second that the government has preserved a good faith argument. Tell me why there wouldn't be good faith to rely on Muni's Melcher, since it wasn't overruled at that time. So I think it was overruled at that time. So what the good faith exception in this circumstance allows is if a search is authorized by binding precedent at the time that the search occurs, and then a change in the law after that point invalidates the search, then the officer can reasonably rely on the binding precedent at the time of the search. But here, the search was unlawful at the time that it occurred. Jones, Hardinas, Bond, all of these cases predate the search. Muni's Melcher had been overruled at that point, or simply, at least was not the controlling law, because it did not apply, it predated Jones and Hardinas, it did not apply the property-based analysis of those cases, and instead primarily applies the privacy rights analysis of CATS, which both Jones and Hardinas say is just irrelevant to the property-based analysis. So Muni's Melcher was not the controlling law on the question of physically intruding onto property for the purpose of gathering information. In that same case, back to my earlier question, they also state, one generally does not have a reasonable expectation of privacy with respect to items that are in the plain view of a law enforcement officer, such as the exterior of a vehicle. And in this case, the officer stated when he walked up to the vehicle, he'd noticed that the bolts on the wheel looked like they had been removed repeatedly, and then that's when he decided to tap the tire. So if the thinking is that, again, this is an item that's in plain view on a public roadway, why is it there is an expectation of privacy subject to the Fourth Amendment protection that you've been arguing? So I have a couple of responses to that. I think my first response is, again, that's talking about the expectation of privacy, whereas what we're talking about here is property rights. And Jones itself says, we don't even have to ask about property rights, or excuse me, privacy rights. So when we're dealing with a property-based analysis of the Fourth Amendment, that's sufficient. You don't also have to have a privacy interest. And Jones also says that cases about plain view are really of no relevance when what we're talking about is doing something more than just looking. So what takes us out of the plain view cases is the fact that the agent did more, the officer did more, and physically intruded on the property. So having some kind of hunch that there could be something going on with the tires, which is what he testifies he had at that point, he says perhaps there was something going on, there may be an issue with the tires, that does not give him license to search. That is what many cases have said. Most recently in Collins v. Virginia, the Supreme Court draws a very clear distinction and says that the fact that officers can lawfully view an area or property does not give them the green light to physically intrude on it. So he can look all he wants, but what he can't do is physically intrude or touch it with an information-gathering purpose without probable cause. Here he did not have probable cause. If the court watches the video, there's about a minute, perhaps, of interaction between the officer and Ms. Richmond before the tire slap. In the district court, the government didn't argue that he had probable cause prior to the tire slap. The district court didn't find that. The officer didn't testify that he had probable cause. Instead, what the court found is that the results of the tire slap contributed to the officer's reasonable suspicion to continue to detain Ms. Richmond after the end of the traffic stop, which is a far lesser standard than probable cause.  Thank you, Counsel. May it please the Court, Anna Kaleri on behalf of the United States. Under Muni's Melchor, the trooper's tapping of the vehicle's tire was not a search in violation of the Fourth Amendment. There, a truck came into a checkpoint stop and it contained a 55-gallon propane tank in the back. There were scratches on it. The officers spoke with the driver. They looked at the tank and the officer pulled out a knife and he tapped the propane tank. This court held that although the agent's tapping of the side tank may have constituted a technical trespass, the tapping did not constitute a meaningful invasion of his property rights. And so that case says there was no reasonable expectation of privacy, and that ruling I think is still good law. So there'd be no reasonable expectation of privacy in this tire, but that's not what the defense is arguing. They're saying Jones says there's now two avenues to a Fourth Amendment search, that something's a search. One is reasonable expectation of privacy, and Muni says no, that's not this case. But then Jones says there's now a second avenue, which is physical trespass. So why is Muni's binding precedent when the law at the time didn't allow a trespass to be a search? So both avenues have always been around. We've always had the property-based rights and then we had cats, which extended them. So essentially where the Fourth Amendment was confined to things, it now covered an expectation of privacy. So as Jones acknowledges and a number of the other cases acknowledge, we now have an enhanced Fourth Amendment. So the property-based rights were always present and the court addressed it in Muni's Melkor. Yes, they did say that he did not have a reasonable expectation of privacy, but they did address the fact that it might have been a technical trespass. The tapping did not constitute a meaningful invasion of his property rights. So they did address both of them there. And as you pointed out in the beginning, the crux of the Fourth Amendment is whether or not it's reasonable. So the court here said, even if there was a technical trespass in this situation with the minor invasion, if it was an invasion, it was entirely reasonable under the Fourth Amendment and there was no reasonable expectation of privacy, nor did any minor invasion of his property rights constitute a search under the Fourth Amendment. That has not been— I don't know that Justice Scalia would agree with you. I think he thinks he revived this property doctrine. I think that's what a lot of the scholars say, that it was dormant for a few decades, including when Muni's was decided that you had to show Katz's reasonable expectation of privacy. And that's what I read the Muni's court to say they couldn't do that because they say, yeah, it is a trespass, but that alone is not enough. You have to show what society would think is reasonable and who cares about your interest in the inside of a tank or, in this case, a tire. I agree with you to a certain extent, yes. I believe that Scalia did kind of revive this, but I don't think it was ever fully lost. And I think the reasonable expectation of privacy did take center stage, if you will, on this. But I think you also have to look at the things that we are considering when we talk about searching. Obviously, we have a higher expectation of privacy in our home and the curtilage, but we also kind of question what to do with effects. And I agree that the vehicle is an effect. And what interest do you have in that and what the Fourth Amendment tolerates in terms of a search or an invasion, whether under the reasonable expectation of property rights or reasonable expectation of privacy or under property rights. And I think it's a factual analysis as to what you look at. When you look at Jones, the invasion was the attachment of a GPS to a car for 28 days where the officers got reams and reams of information. This here is a minor touching in the context of a traffic stop on a public road. It wasn't private property. It wasn't curtilage. It wasn't in a home. The officer pulled over the Ms. Richmond because there were issues with her tires, and she crossed over the fog line. All of this is reasonable. All of this is proper. As he was there, he noticed that the bolts had been stripped. There are multiple reasons. But it can be a search and still be reasonable. I mean, that's what I take the last argument in your brief to be saying. Even if it's a search in the totality you're describing, it's reasonable. But that's different than saying it's not a search. Yes. I think that there are two arguments there. One, it's not a search. Even if it was a search, it is entirely reasonable. And I think, again, going back to Muniz-Melkor, the tapping of the knife onto the propane tank to consider the structural integrity of it is similar to the tapping of the tire here when the officer walked back from speaking with Ms. Richmond in the vehicle. I think it's on all four points here in terms of the actions of the officer. It hasn't been overruled. And even if because the court in Muniz-Melkor addressed both the reasonable expectation of privacy and the property rights, I believe it's compatible with all of the cases that have been coming out of the Supreme Court recently that address more of the property rights rather than the reasonable expectation of privacy. But I think also in terms of if we want to flip all the way back to the good faith exception, I think that there are factual distinctions between those cases and what happened here that would lead a reasonable officer to believe that Muniz-Melkor was still appropriate and we could still follow that. In Bond, it was the search of luggage. In Jones, it was the attachment of a GPS to a vehicle for an extended period of time. In Hardeen's, it was a dog on a curtilage of a home. These are all very distinct from a traffic stop where the purpose was to stop the defendant for a traffic violation, pursue safety goals, and then as this is going on, there are other issues that arise that he needs to address. Are you referring to him perhaps developing probable cause during the stop? Absolutely, Your Honor. And the probable cause constituted what from, or what did it arise from? Just the stripping of the boats that he noticed or the wobbling of the tire? What exactly gave him probable cause to move to a search? So you have an eight-year officer who has extensive experience in this area and just in general. The stop occurred on a main corridor that was known for criminal activity. The tires were shaky, wobbly, unbalanced. The driver drove over the fog line multiple times. The third brake light wasn't working. When he stopped her and spoke to her, she was extremely nervous. She blurted out that she was from Arizona. She couldn't make eye contact with him. Her hands were shaking as she passed over her information. He testified that her mouth had some white coating on it that looked like she was nervous and that she was concealing something, an indication of deception, he called it. Then the bolts of the tire had been stripped as if they'd been taken off numerous times. So all of those things together lead to probable cause that there was contraband in the vehicle. If the officer truly believed that, why didn't he just ask for consent to search? Ultimately, he did, but he chose to continue the traffic stop. She got out of the vehicle. They went to the back and they spoke and on his way. So if you watch the video, he actually went onto the passenger side and spoke to her across that way. And as he walked that way, as he walked up to the front of the vehicle, that's when he noticed the stripped bolts. It was on the way back that he tapped the tire and then continued to the back where she met him. But the tire tap occurred before he asked for consent. Correct. Yes, your honor. So that's my point. If he believed he had probable cause of criminal activity, why didn't he ask for consent before he tapped the tire, which the appellant is arguing constituted a search? Well, there's nothing that mandates that he has to ask for consent right there. He's allowed to continue the stop in his questioning of Ms. Richmond as they converge to the back. But the stop was pursuant to traffic concerns, was it not? It wasn't. Correct. He wasn't stopping the car pursuant to probable cause that criminal activity was occurring. As you stated from the record, the car went over the fog line, the tire was wobbling. He made a traffic stop. He didn't make a stop pursuant to probable cause of criminal activity. Absolutely, your honor. So to the extent that he was extending this traffic stop to a search, why didn't he ask for consent if he developed probable cause during this traffic stop? Ultimately, he did. But when he pulled Ms. Richmond over, it was because she had crawled over the fog line multiple times and because of the issues with the tires. So he pulls her over and he goes up, they speak, he asks for her registration, license and whatnot and asks her to get out of the car so they can go to the back. During that time, he develops probable cause. Simply because he develops probable cause, it does not mean that he needs to ask for consent immediately. He continued the stop. He spoke with her in the back. He subsequently ran her information, found out that the vehicle had just traveled back over the border a few hours prior in contradiction to her statements. There were other points of the conversation too that led him to believe that this is more than just a traffic stop. And then at that point, he asked for consent. Simply because he didn't ask for consent at the moment probable cause was there or just before he tapped the tire doesn't mean that probable cause didn't exist or that he couldn't have done so. Let me ask about your final argument we've talked about a little bit, which is that assuming it's a search, I read you to be saying it's reasonable that he touched the tire, even if there was just reasonable suspicion and not probable cause. And I do think, I mean, there's a lot of common sense to that. I mean, like I said, you know, just on reasonable suspicion, the police can keep someone on the side of the road for 30 minutes waiting for a drug dog to arrive. This seems far less invasive than that. But I just can't think of another area where reasonable suspicion, it's enough for a Terry stop like that, but it's, where else is reasonable suspicion enough for a search? I don't know if there is another area, but I think it's because this is such a unique factual situation. When you're on a public highway in an automobile, this isn't the house, this isn't the curtilage, this isn't your bag of luggage where we all recognize you put things in it that you want to keep hidden from other people. There seems to be a tension there when you contain things with your personal belongings. There are a number of other factors here that just make a tapping of a tire, one, not a search, but even if it was a search, entirely reasonable in the context of a public road traffic stop on a tire which is exposed to public view and that we don't typically recognize a reasonable expectation of privacy in. But do you think you need at least reasonable suspicion or you can just tap a tire on a traffic stop with no basis whatsoever? I don't believe there was a search here, so I don't think you need reasonable suspicion. Assuming there is, then yes, you would at least need reasonable suspicion for it. And I'm assuming there was a search for purposes of this question. For me, it's whether or not there was reasonable suspicion, probable cause for the search. To the extent that he had some concerns about safety and traffic and the tire being wobbly, all of which he said he noticed and he testified to at the suppression hearing, to the extent he talks about that, arguably that equals probable cause or reasonable suspicion to conduct this search. But their argument to counter that is that he needs to be solely motivated by safety So, I admit that I don't have a case directly on point for that, but I would submit that that's not reasonable and I don't think that's ever been required by this court. The cases that were cited are about community caretaking provisions. This was community caretaking to a certain extent, but it wasn't completely divorced of a traffic stop. She crossed over the fog line, she had wobbly tires, and he was justified in pulling her over. I don't think that it is reasonable, again, to require officers, when they are conducting a traffic stop, to be solely motivated by one or the other. We've never held that, as far as I'm aware, there's never been a holding that requires you to have one purpose. And in fact, we look at whether it's objectively reasonable. We don't look at the subjective intent of the officer when these things are being performed. So I think that requiring that the officer was only considering safety or requiring that he was only considering whether or not there was a crime being committed is, one, I think impractical, and two, not what the Fourth Amendment intended or what the case law intends when analyzing what's unfolding during a traffic stop. And I guess the other thing which was pointed out is, if I were inclined to conclude that he had reasonable suspicion based on his safety concerns, then that argument gets seriously to the garage, doesn't it? I don't think it seriously undermines it. He did follow her and they were keeping track as they went in a reasonable speed to where it was. They did unhook the tire and then they put it back on. Presumably they did a good job at doing that to secure any sort of safety reasons, and I would presume that any officer wouldn't allow a person to drive in a car that was unsafe. You're arguing about reasonable suspicion, and you say it's probable cause, if not, it's at least reasonable suspicion. That's about crime at that point, right? Based on her answers and the wobbly tire, at that point he had suspicion of criminal activity, not of safety concerns. Yes. If we're going down the road, that this was a search. The other point you made was that if it was a search, it was reasonable. And the search that we're talking about would be the tapping of the tire before he asked for consent. If that search was reasonable, would it have been reasonable for the officer to open the door of the car and look under the seat? If he developed probable cause, absolutely. If there was probable cause at that point to tap the tire, the probable cause doesn't dissipate. In fact, there's more at that point after he hears the hollow sound, the abnormal sound of the tire, then yes. So if it's a search and your point is that it's reasonable, the probable cause, reasonable suspicion develops strictly from the fact of the way that she answered his questions and that the bolts on the wheel had been previously stripped or removed. So if it was a search to tap the tire, yes, it was the things that I listed before in terms of the condition of the truck, the nervousness, the stripped bolts, all of that together before the tapping of the tire, correct? Unless there are any further questions, I'll rest on my brief. Thank you. Roboto? Let me try to address just a few things. So I did want to return to this technical trespass argument. Muniz does say something about a technical trespass. I think it's going pretty far to say Muniz preemptively anticipated Jones some 21 years later in the sort of trespass test that was announced in Jones. And as far as this technical trespass issue, that was precisely the argument of the dissenters in Jones, who said, well, now you've just said that every technical trespass that leads to evidence gathering is a search under the Fourth Amendment. That can't possibly be the rule. And what the majority said is, well, if it's a constitutionally protected area and an information gathering purpose, then yes, it would be a search. That was their response to this criticism about technical trespasses. So I think Jones already addresses that issue. Jones on the property rights issue at least overrules, supersedes Muniz-Melkor, which simply was not controlling at the time of the search. And I do want to emphasize that, you know, in my view, the government is asking for a couple of extraordinary things, although doing it in a way that is very reasonably presented, which is they're asking to search on less than probable cause. And they're asking to search as a routine incident of a traffic stop. You said search on less than probable cause? On less than probable cause. She just spent a great deal of time telling me that there was probable cause, if in fact it was a search. That's certainly there's one alternative argument that there was probable cause, but their reasonableness argument is that even if there was a search without probable cause, you should still find it to be reasonable, which is a request that this court approve a search on less than probable cause. Those things I don't dispute, and I don't think anyone could dispute that the officer had the ability to continue to investigate if he had safety concerns. What I do dispute is that he did not have the ability to search without probable cause. On the question of probable cause, I do want to point the court again to the officer's testimony, because I do think it would be important that he actually had specific articulable facts that he believed gave him probable cause. Prior to the time when he slapped the tire, what he says at record 132 is he thought there may be, quote, an issue with the tires. And what he says at record 245 is there may be, quote, something going on. So he essentially testifies that basically he had a hunch. He had some kind of suspicion. He's not sure what's going on. He's continuing to investigate. I'm not, in this appeal, disputing that he could continue to investigate. What I'm disputing is that he had probable cause at the point when he slapped the tire, when all he had seen was wobbly tires while she's driving and then some old stripped bolts on a 10-year-old car, plus a minute of interaction with her where he asks her a few questions about where she's coming from and where she's from. That's all that had occurred. On this point, I would actually urge the court to watch the video, if the court has not done so already, to view exactly the interaction up to the point when he taps the tire. And I did also want to point out that the government is making two, I think, entirely contradictory arguments that both he had probable cause of criminal activity at the time he tapped the tire and, conversely, that he didn't need probable cause because he was motivated by safety concerns. The government is, of course, entitled to make alternative arguments, but I think just the inconsistency of those arguments lend some belief that, to me, shows that neither argument has particular force on the particular facts of this case. Because the officer does testify that he had some suspicion of drugs, he also thought there may be a safety issue with the tire. I don't disagree that he could investigate that safety issue. What I do disagree with is that he could conduct a search at the time that he tapped the tire. I want to go back to good faith. And, again, I know there's a dispute about whether it's even an issue, and that's tricky, but assuming it is, your basic, I mean, it just seems to me you're really requiring, you know, there's a case from the early 90s that says touching a tank, which I think everyone agrees it's the same thing as touching a tire, is okay. And you're saying, though, the officers, if that's been the law for years, should know that, you know, Justice Scalia transformed the Fourth Amendment and that that has this impact on this case. I mean, this is really high-level, you know, stuff that gets debated in the law schools now. But you're saying an officer should be held to that sort of Fourth Amendment scholar level of knowledge? Yes. And I don't think I'm saying that. I think that's what the Supreme Court says when it announced this particular good faith exception, which requires objectively reasonable reliance on binding circuit precedent. So you don't look at what the officer, you know, what, did he read Fifth Circuit decisions? Probably not. But it has to be objectively reasonable reliance. And the cases where this court and the Supreme Court have applied this exception, the search was clearly lawful at the time based on binding precedent, and a change in the law after the search invalidated the search. And that's just not what happened here, where all of the cases that we're talking about predated the search and would have rendered the search unlawful at the time that it occurred. There are no further questions? Thank you, counsel. We'll take this matter under advisement.